The judgment of the United States Customs Court is *reversed*.

UNITED STATES *v.* E. DILLINGHAM, INC. (No. 3432)[1]

[1] T. D. 45297.

United States Court of Customs and Patent Appeals, November 20, 1931

*Charles D. Lawrence*, Assistant Attorney General (*Philip Stein* and *Ralph Folks*, special attorneys, of counsel), for the United States.
*George E. Van Kennen* and *John D. Van Kennen* for appellee.

[Oral argument October 9, 1931, by Mr. Folks and Mr. John D. Van Kennen]

Before Graham, Presiding Judge, and Bland, Hatfield, Garrett, and Lenroot, Associate Judges

Hatfield, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

Certain imported cloth was assessed for duty by the collector at the port of Ogdensburg, N. Y., as "waterproof" cloth at 5 cents per square yard and 30 per centum ad valorem under paragraph 907 of the Tariff Act of 1922. The pertinent part of the paragraph reads as follows:

Par. 907. * * * waterproof cloth composed wholly or in chief value of cotton or other vegetable fiber, whether or not in part of india rubber, 5 cents per square yard and 30 per centum ad valorem.

The importer protested, claiming that the cloth was not waterproof and that it was properly dutiable as cotton cloth at 15 per centum ad valorem and, for each number, five-sixteenths of 1 per centum ad valorem under paragraph 903 of that act. The pertinent part of the paragraph reads:

Par. 903. * * * Cotton cloth, printed, dyed, colored, or woven-figured, containing yarns the average number of which does not exceed number 40, fifty-five one-hundredths of 1 cent per average number per pound; * * * *Provided*, That none of the foregoing, when containing yarns the average number of which does not exceed number 80, shall pay less duty than 15 per centum ad valorem and, for each number, five-sixteenths of 1 per centum ad valorem; nor when exceeding number 80, less than 40 per centum ad valorem: * * *

On the trial below, C. Edward Dillingham was the only witness called by the importer. He testified that he made three tests, presumably for the purpose of ascertaining whether the imported cloth

was waterproof although he did not so state. These tests were described by the witness as follows:

A. This Exhibit 1—I wrapped the piece of cloth around a piece of paper, so no seams were exposed on the upper side, and set it under a faucet and let the water run or drip on it, and after eight minutes the paper was soaking wet.

Q. Did you do anything else with Exhibit 1?—A. No, sir.

Q. That covers your testimony on Exhibit 1?—A. Yes, sir.

Q. What test did you make of Exhibit 2?—A. I took Exhibit 2 and made a pocket over a glass tumbler containing water, then put a weight on top of the cloth so it would bring the cloth below the surface of the water. In two hours or two and one-half hours I examined it, and the water in the pocket of the cloth was up to the level of the water outside of the cloth. In other words, the water had come through the cloth up as high as the water that was outside of the cloth.

Q. That applies to Exhibit 2?—A. That applies to Exhibit 2.

Q. What did you do with the Exhibit 3?—A. Exhibit 3—I thoroughly wet the cloth first, then made a pocket, suspended it over a vessel, filled the pocket of the cloth with water; and in from 30 seconds the water began to drip through, and after 25 minutes all of the water which had been placed in the pocket had dripped through and was in the vessel underneath.

Q. Does that cover Exhibit 3?—A. That covers all the test I made.

Q. The exhibit in the first place, Exhibit 1, did you wet the sample?—A. No.

Q. But you actually immersed it in water?—A. No. Exhibit 1—I wrapped it around paper and set it in an ordinary sink under a faucet, and the water dripped at about three drops per second.

*       *       *       *       *       *       *

Q. In your test of No. 3 you actually wet the cloth before you tested it?—A. Before I made the test.

Q. Dipped it in water?—A. Dipped it in water.

Judge Young. How long did you leave it in water?

The Witness. Before I made the test it was a matter of a minute.

Q. Did you squeeze it out before you tested it?—A. No; I got it thoroughly wet, *then took it in my hand and squeezed the water out; it was dripping wet.*

Q. You did not rub it?—A. No. (Italics ours.)

No evidence was offered by the importer as to the intended uses of the cloth.

The Government called as a witness C. C. LaFrenay, acting appraiser at the port of Ogdensburg. He testified that he subjected a sample of the involved merchandise to a test in order to determine whether it was waterproof; that the test consisted of tying a piece of the cloth over the top of an ordinary drinking glass, arranging it so as to form a "pocket," pouring about one-half of 1 inch of water into the "pocket," and permitting it to stand for about 65 hours. He said that, at the expiration of that time, although the under surface of the cloth was damp, the water had not leaked through into the glass.

On this record the court below, in an opinion by Kincheloe, Judge, Tilson, Judge, dissenting, held that the merchandise was not waterproof cloth and, accordingly, sustained the protest.

It is contended by the Government that the testimony regarding the tests performed by the witness for the importer should not have

been considered by the trial court, because there was no evidence tending to prove that they were the usual or proper tests applied to cloth to determine its waterproof qualities; that the tests made by the court below, and referred to in its opinion, do not constitute competent evidence, upon which its decision could be based; and that it is evident from the opinion of the trial court that its decision was based, not upon the evidence in the case, but upon the tests made by it.

It is contended by counsel for appellee that waterproof cloth, in a tariff sense, means cloth *impervious* to water; that the imported cloth failed to meet this requirement; that the testimony offered by the importer was sufficient to overcome the presumption of correctness attending the collector's classification; that the qualifications of the appellee's witness, not having been questioned on the trial, can not now be questioned in this court; that the court below did not err in testing the samples in order to determine whether they were waterproof, because the question whether water will or will not pass through cloth is a matter of common knowledge, of which the court may take judicial notice; and that, therefore, the judgment below should be affirmed.

In the case of *United States* v. *Hudson Forwarding & Shipping Co.*, 18 C. C. P. A. (Customs) 258, T. D. 44427, this court, speaking through Lenroot, Judge, in construing the provision for waterproof cloth in paragraph 907, quoted the following from the Summary of Tariff Information, 1921: "Waterproof cloths are used for raincoats, auto tops, dress shields, infants' wear, in hospitals, and for many other purposes. Any cloth that is impervious to water, or that is substantially so and *intended to turn water*, may be classed as a waterproof cloth [italics ours]," and, among other things, said:

* * * We do not think that Congress intended that cloth which was not in its manufacture designed to repel or turn water in use. or cloth that is not suitable for such use, should be included in the term "waterproof cloth" found in said paragraph 907. If, in the manufacture of the cloth, its being rendered impervious to water is merely an incidental result, without any intent or design to make it waterproof for the purpose of repelling or turning water, and it is not suitable for such use, it is, in our opinion not "waterproof cloth" within the meaning of said paragraph.

* * * * * * *

We think all of the above indicates that "waterproof cloth," as those words were used by Congress, means cloth designedly rendered impervious to water or suitable for use as material for articles designed to repel water.

* * * * * * *

We therefore hold that the words "waterproof cloth," as used in paragraph 907, include only cloths which were designed or intended in their manufacture to repel water, or which are suitable for use as material for articles designed to repel water.

In the opinion in that case, this court, in quoting from the Summary of Tariff Information, italicized the words "intended to turn

water," and said that waterproof cloth means cloth "designedly rendered impervious to water or suitable for use as material for articles designed to *repel* water." The court also said that waterproof cloth includes "only cloths which were designed or intended in their manufacture to *repel* water, or which are suitable for use as material for articles designed to *repel* water," and that cloth intended to be waterproof "would stand a reasonable amount of wear before water would pass through it." (Italics not quoted.)

It would seem to be obvious that the court did not intend, in the *Hudson Forwarding & Shipping Co.* case, *supra*, to hold that only such cloth as was impervious to water should be classed as waterproof cloth. Such a holding would exclude from paragraph 907 practically all cloth composed wholly or in chief value of cotton or other vegetable fiber, not in part of india rubber, designed, intended, and suitable for use in the manufacture of articles designed to repel water.

It is clear, we think, from the quoted statement contained in the Summary of Tariff Information and from the language of the statute itself, that the Congress did not intend that the provisions for "waterproof cloth" should include only such cloth as was impervious to water, but that, on the contrary, Congress intended that cotton cloth *substantially* impervious to water and intended to repel or turn water or suitable for use as material for articles designed to repel or turn water should be included within the paragraph, unless otherwise more specifically provided for.

In its decision the court below referred to the testimony in the case but did not base its conclusion thereon. It is stated in the decision that, for its "own guidance and information," it made certain tests of two of the exhibits in evidence and found that "some of the water did drip through the cloth over night, and that the underside was wet with moisture resembling dew." The court also said that it was barely possible that "the water penetrated through more freely on account of the pieces of cloth having been used for this purpose before. This would not, however, speak very well for the waterproof quality of the cloth, and we are satisfied that it is in fact not waterproof." Obviously, the court was not satisfied of that fact until it had made the tests described in its opinion.

Whether the tests made and described by the witnesses and by the court below were proper for determining whether, in a tariff sense, the cloth was waterproof, does not appear from the record. It seems to us that this is a matter for experts, those dealing in such material and to such an extent as to be qualified to speak authoritatively on the subject. We do not mean to be understood as holding that, in all cases, it would be necessary to submit the testimony of experts. Cases may arise where, by a mere ocular inspection of the

cloth, the court could readily determine the question. Here, however, the cloth is of such character as to actually require proper tests to determine whether it is waterproof. Accordingly, due and orderly procedure requires that the issues in this case be determined from a consideration of competent evidence, because, as was said in the case of *United States* v. *Burley & Tyrrell Co.*, 5 Ct. Cust. Appls. 401, T. D. 34938, "to hold otherwise would deprive the protestant [parties] of the right of cross-examination of adverse witnesses and would effectually block the review of this court of the facts on which the decision was based." See also *Krusi* v. *United States*, 1 Ct. Cust. Appls. 168, T. D. 31213.

There is no evidence of record that the involved merchandise was not designed and intended to *repel* or *turn* water, or that it was not suitable for use as material for articles designed to *repel* or *turn* water. Furthermore, the witness for appellee, although his testimony was not objected to, did not testify that the tests he had made were the usual and proper tests for determining the waterproof character of the cloth, as the term "waterproof cloth" was defined by this court in the *Hudson Forwarding & Shipping Co.* case, *supra*, or that he was informed in regard thereto. Strange as it may seem, he did not testify that these tests were made for the purpose of determining the waterproof qualities of the cloth.

We are of opinion, therefore, that the importer failed to overcome the presumption of correctness attending the collector's classification.

We may say in conclusion that, if the merchandise is not waterproof cloth, in a tariff sense, it would have been an easy matter for the importer to have established that fact by competent evidence. This, in our opinion, the importer failed to do.

For the reasons stated, the judgment is *reversed*.